UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAFECO INSURANCE COMPANY
OF AMERICA,

        Plaintiff,

v.
                                         Case No. 11-cv-13483
                                         Paul D. Borman
                                         United States District Judge

POSEN CONSTRUCTION, INC.,
DESIGN EQUIPMENT, LLC,
RESEARCH DEVELOPMENT, LLC,
NORMAN ZAPCZYNSKI, SUZANNE
ZAPCZYNSKI, KENNETH ZAPCZYNSKI,
and KAREN ZAPCZYNSKI,

        Defendants.

_____/

**OPINION AND ORDER**
**(1) GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. No. 20), and**
**(2) DENYING AS MOOT PLAINTIFF'S AMENDED MOTION**
**FOR SUMMARY JUDGMENT (Dkt. No. 16)**

On August 10, 2011, Safeco Insurance Company of America ("Safeco" or "Plaintiff")

filed the Complaint in this matter, seeking indemnification for losses related to various bonded

construction projects. (Dkt. No. 1.) Concurrent with its Complaint, Plaintiff also filed a Motion

for Summary Judgment. (Dkt. No. 2.) On October 12, 2011, Plaintiff filed an Amended

Complaint and an Amended Motion for Summary Judgment. (Dkt. Nos. 15, 16.)

Posen Construction, Inc. ("Posen"), Design Equipment, LLC, Research Development,

LLC, Norman Zapczynski, Suzanne Zapczynski, Kenneth Zapczynski, and Karen Zapczynski

1

(collectively, "Defendants"), filed a Response to Plaintiff's Motion for Summary Judgment on November 2, 2011. (Dkt. No. 19.) On November 3, 2011, Defendants filed a Motion to Dismiss the Amended Complaint. (Dkt. No. 20.)

On November 20, 2011, Plaintiff filed a Reply to its Motion for Summary Judgment. (Dkt. No. 29.) Plaintiff also filed a Response to Defendants' Motion to Dismiss on December 6, 2011. (Dkt. No. 30.) Defendants filed a Reply on December 28, 2011. (Dkt. No. 31.) The Court held a hearing on March 8, 2012.

For the reasons stated below, the Court will GRANT Defendants' Motion to Dismiss and DENY AS MOOT Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND

On December 29, 2006, Plaintiff and Defendants entered into an indemnity agreement. Pursuant to this agreement, Plaintiff issued bonds naming Defendant Posen as principal. Defendants agreed to pay Plaintiff upon demand as follows:

> All loss, costs and expenses of whatsoever kind and nature . . . incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned, or by reason of the refusal to execute any bond.

(Pl.'s Mot. Summ. J. Ex. A, Indemnity Agreement 1.)

The Indemnity Agreement further provided as follows regarding claims pertaining to the issued bonds:

> Surety shall have the exclusive right for itself and the Undersigned to determine in its sole and absolute discretion whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.

2

(Indemnity Agreement 1.)

If Defendants were unable to pay Plaintiff, the Indemnity Agreement provided that "the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s)." (Indemnity Agreement 2, General Provisions ¶ 5.)

On May 4, 2011, Plaintiff and Defendants entered into a Surety Financing and Collateral Agreement. (Pl.'s Mot. Summ. J. Ex. C, Surety Financing Agreement.) This document reaffirmed the parties' commitments under the Indemnity Agreement, and stated as follows:

> The Bonded Contracts are in various stages of completion, and the Principal and the Indemnitors hereby acknowledge and admit that: (a) the Principal's financial ability to meet all payment obligations associated with one or more of the Bonded Projects at the time they are due is uncertain at present; (b) certain subcontractors and suppliers of labor and/or materials with respect to one or more of the Bonded Projects have not been paid; (c) the Principal and the Indemnitors have requested the financial assistance of the Surety as a result of (a) and (b) above; and (d) but for the willingness of the Surety to enter into this Agreement, the Principal may be unable to complete the performance of one or more of the Bonded Projects and pay its subcontractors and suppliers of labor and/or materials with respect to one or more of the Bonded Projects at the time payment is due . . . .

(Surety Financing Agreement 2, ¶ F.) The Surety Financing Agreement further required that Defendants execute a promissory note for "such amount as has been previously paid by Surety and such amounts that may be paid in the future by Surety under this Agreement or the Agreements of Indemnity, along with interest at a rate of 6½ percent per annum." (Surety Financing Agreement 15, ¶ 5.) Defendants delivered the note, with the exception of Defendants

3

Kenneth Zapcynski and Karen Zapczynski.

Under the Promissory Note, Defendants agreed to pay "the full amount of 'Surety's Loss' as defined in the Financing Agreement, plus interest at a rate of six and one-half percent . . . per annum immediately UPON DEMAND." (Pl.'s Mot. Summ. J. Ex. D, Promissory Note 2.)

On July 26, 2011, Plaintiff sent Defendants a demand letter, requesting reimbursement under the Indemnity Agreement of $18,266,489.18. (Pl.'s Mot. Summ. J. Ex. E, July 2011 Demand Letter.) On October 7, 2011, Plaintiff sent Defendants a letter further demanding that Defendants post $34,000,000 in cash collateral by October 11, 2011, pursuant to paragraph 5 of the General Provisions section of the Indemnity Agreement. (Pl.'s Mot. Summ. J. Ex. F, Oct. 2011 Demand Letter.)

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted).

## III.  ANALYSIS

### A. Defendants' Joint Motion to Dismiss

The Surety Financing Agreement provides as follows:

> The parties hereby choose the courts of the State of Michigan as the sole and exclusive forum for any litigation of any disputes between the Surety and the Indemnitors, whether arising under this Agreement, the Agreements of Indemnity, the Bonds or otherwise.

(Defs.' Mot. to Dismiss Ex. 1, Surety Financing Agreement 22, Misc. Provisions ¶ 2.)

4

Defendants argue that this provision requires Plaintiff to proceed with its claims in a Michigan state court.

Plaintiff argues that the intent of the above provision was not to limit jurisdiction to Michigan state courts. Rather, Plaintiff contends that the forum selection clause allows a cause of action to be brought in any court that is located within the State of Michigan, including a United States District Court. (Pl.'s Resp. to Mtn. to Dismiss Ex. A, Goetz Aff. ¶ 5.) Plaintiff also argues that Defendants' interpretation of the forum selection provision is contrary to Sixth Circuit case law. Finally, Plaintiff claims that adopting Defendants' interpretation would waive the parties' rights of removal.

In Michigan, the interpretation of contracts is a question of law. *Davis v. LaFontaine Motors, Inc.*, 271 Mich. App. 68, 73 (2006). "The main goal in interpreting a contract is to honor the parties' intent." *Id.* However, the Court may not consider extrinsic evidence unless the language of the contract is ambiguous. *See Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 469-70 (2003). Contractual language is ambiguous when two provisions irreconcilably conflict, or where a term is equally susceptible to more than one meaning. *Coates v. Bastian Brothers, Inc.*, 276 Mich. App. 498, 503 (2007).

Before considering Plaintiff's evidence regarding the parties' intent, the Court must first address whether the phrase "courts of the State of Michigan" is ambiguous.[1] The Court finds that it is not, because it does not conflict with any other term of the contract, and because it is not susceptible to more than one interpretation, as discussed *infra*. Accordingly, the Court will not

_____

[1] *But see Shay v. Aldrich*, 487 Mich. 648, 667-68 (2010) (holding that extrinsic evidence may be used to show that a latent ambiguity exists in a contract).

consider Plaintiff's extrinsic evidence in interpreting the meaning of the contract language.

"Dictionary definitions may be used to ascertain the plain and ordinary meaning of terms undefined in an agreement." *Coates*, 276 Mich. App. at 503. "Of" is defined as "a function word to indicate the place or thing from which anything . . . is directed or impelled." Merriam-Webster's Third New International Dictionary Unabridged 1565 (1993). The United States District Courts are "directed or impelled" by the authority granted to Congress in the United States Constitution. *See* U.S. Const. art. III, § 1. They are therefore courts *of* the United States, not *of* the State of Michigan. Accordingly, this Court lacks jurisdiction over the instant matter based on the parties' forum selection clause.

Plaintiff argues that the Sixth Circuit's opinion in *Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992), requires a different outcome. It does not. In *Basicomputer*, the Sixth Circuit addressed a forum selection clause requiring the parties to litigate "in courts in the State of Ohio." *Id*. at 510. The Sixth Circuit held that this clause included the United States District Court for the Northern District of Ohio, because it was "unquestionably a court '*in* the State of Ohio[.]'" *Id*. (emphasis in original). In so holding, the Sixth Circuit cited as a supporting comparison case *Spatz v. Nascone*, 364 F. Supp. 967 (W.D. Pa. 1973), which held that a forum selection clause specifying courts *of* the Commonwealth of Pennsylvania required resolution in state court. *See Basicomputer*, 973 F.2d at 510. The Sixth Circuit's reasoning in *Basicomputer* therefore supports the Court's above reasoning. *See also Amer. Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, 428 F.3d 921, 926 (10th Cir. 2005) (affirming the U.S. District Court for the District of Colorado's remand order based on a similar forum selection clause, and holding that "the federal court located in Colorado is not a court *of* the *State* of Colorado but

6

rather a court *of* the *United States of America.*" (emphasis in original)); *Dixon v. TSE Intern. Inc.*, 330 F.3d 396, 398 (5th Cir. 2003) (affirming remand order and holding that "[f]ederal district courts may be *in* Texas, but they are not *of* Texas.").

Plaintiff argues that it is somehow stripped of the right of removal if the Court interprets the forum selection clause as requiring litigation in state court. This cannot be true because Plaintiff has no right of removal. "A *defendant* is entitled to have the suit removed to a proper federal court as a matter of right, on complying with the conditions prescribed by statute." *Regis Assoc. v. Rank Hotels (Management) Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990) (emphasis added); *see also* 28 U.S.C. § 1441(a) (providing that a civil action brought in state court "may be removed *by the defendant or the defendants . . . .*") (emphasis added). Plaintiff's argument is unpersuasive because it attempts to invoke a right held exclusively by out-of-state defendants in civil cases, not out-of-state plaintiffs.

Accordingly, because the parties have expressly chosen "the courts *of* the State of Michigan as the sole and exclusive forum for any litigation" that arises between them, the Court will dismiss this case for lack of jurisdiction. (*See* Surety Financing Agreement 22, Misc. Provisions ¶ 2.)

## B. Plaintiff's Motion for Summary Judgment

The Court has found that it lacks jurisdiction over this matter, as explained *supra*. The Court will therefore deny as moot Plaintiff's Motion for Summary Judgment, and will not consider the merits of the Motion.

## IV. CONCLUSION

For the reasons stated above, the Court will:

7

(1) **GRANT** Defendants' Motion to Dismiss;

(2) **DENY AS MOOT** Plaintiff's Motion for Summary Judgment; and

(3) **DISMISS** the action for lack of jurisdiction.

**SO ORDERED.**

_____
PAUL D. BORMAN
UNITED STATES DISTRICT COURT JUDGE

Dated: 3-9-12
Detroit, Michigan

8